## IN RE: The Marriage of MINTZER
### Case No. 83-27881 FC 20
Eleventh Judicial Circuit, Dade County
January 29, 1987

### APPEARANCES OF COUNSEL

**Lawrence A. France** for petitioner/wife and plaintiff.

**Law Offices of Arthur G. Meyerson** for respondent/husband and defendants.

## OPINION OF THE COURT

PHILIP BLOOM, Circuit Judge.

### *FINAL JUDGMENT OF DISSOLUTION OF MARRIAGE*

THIS CAUSE duly came before the Court for Final Hearing on Dissolution of Marriage and related issues. The Court saw and heard the witnesses, adjudged their demeanor and credibility, and reviewed other matters of evidence before it including numerous documents, correspondence, financial data and other papers, and accordingly makes the following findings of fact and conclusions of law:

1. This matter should have been one for "usual" dissolution of marriage, but instead it turned into warfare the way the participants abused each other and the court system. The victims here are variously the parties, the grandparents, a child, the attorneys, the judges sitting on the case, and the court system. During the course of the final hearing in this cause, the parents of the Respondent/Husband, Issac and Florence Mintzer (hereinafter "Grandparents") were heard from, and the alleged rights of each of the persons claiming any interest in the condominium in which the Grandparents reside were presented to the Court for determination as they relate to this matter.

2. The Respondent/Husband (hereinafter "Husband") never earned more than Thirty Five Thousand ($35,000.00) Dollars annually in his thirty (30) years of marriage to his Petitioner/Wife (hereinafter "Wife"). The Wife took her wifely and motherly duties seriously and did not pursue a permanent profession or business. For most of the marriage, the Husband pursued his business interests, but later in the marriage, a female interest, as well.

3. Each party obtained an attorney, and the attorneys, whether through zeal or client instigation, treated this case and the parties as if they were the Rockefellers, Vanderbilts, Gettys or Carnegies. Over one hundred seventy five (175) docket entries are recorded in this case. The file is about seventeen (17") inches high and weighs approximately four (4) pounds. The file reflects a multitude of motions, hearings, claims and prayers for relief not called for by the plight of these parties. After being sued for dissolution of marriage, the Husband then countered for two years on a prayer for alimony from his Wife, thereby instigating pre-trial discovery on that issue; and then, at the moment of trial, the Husband abandoned that claim. Court proceedings here were used and abused in varying degrees by the parties and at least one lawyer to the extent that this case was elongated and the Court was precluded from hearing other matters.

2

4. The Husband, with about Twenty Thousand ($20,000.00) Dollars of spendable income annually, prior to the final hearing paid fees to his own lawyer of Nineteen Thousand ($19,000.00) Dollars, and to his Wife's lawyer of Six Thousand ($6,000.00) Dollars. A substantial part of those monies came from the Husband's aged parents in the form of loans when those Grandparents cannot afford such expenditures in their retirement years. That Twenty-five Thousand ($25,000.00) Dollars does not include any payment for trial preparation for the attorneys, or for the final hearing which took approximately thirty-two (32) hours including over a weekend. Those monies do not include research and preparation of four (4") inches of legal memoranda and proposed findings "dumped" upon the trial court subsequent to the conclusion of the hearing. The Husband conceivably may ultimately be responsible for attorney's fees totalling in excess of Fifty Thousand ($50,000.00) Dollars, or two and a half times (2-1/2) times the Husband's annual spendable income, prior to being able to repay his parents' loans advanced to him in this case, pay any alimony, support, food, clothing, shelter, or medical expenses for his wife, or for his child, or for his girlfriend or for himself.

5. The parties are apparently unaware that a Court cannot live the daily lives of the litigants who come before it. The best that can be expected of a Court is that it be fair, just, equitable and wise in considering the means, wishes, needs and abilities of persons before it, and to apply applicable law to the existing facts and circumstances. Venom between parties as litigants, or their attorneys, cannot change the role of the Courts; and ill feeling cannot infuse the wherewithal to live in a situation where there is not sufficient monies or property to divide or to provide adequately for the needs of the parties and those dependent upon them. In short, not even this Court can get blood from a turnip, and hard compromises must be made. The Court has therefore disallowed some arguable claims and adjusted some property rights in order to set this matter at rest and to avoid future disputes.

6. Although Florida has "no fault" dissolution of marriage, nevertheless, the Court specifically finds here that adultery as to duration of circumstances and economic impact, misrepresentation, fraud, abuse of court processes and proceedings, improper claims and defenses, are all proper matters to be considered in the award of alimony, support and the adjustment of property rights between the parties as well as the imposition or award of attorneys' fees.

7. The instant proceedings are equitable in nature and the Court will apply established legal and equitable principles in considering the matters before it.

3

Based on the evidence presented to this Court and the equities and law applicable herein, it is upon consideration hereby ORDERED AND ADJUDGED as follows:

1. This Court has jurisdiction of the parties and of the subject matter of this action.

2. The equities of this cause and the credibility of the parties are with the Wife, Margo Mintzer, and not with the Husband, Lawrence Mintzer.

3. The Wife is and has been a resident of Dade County, Florida, for more than six (6) months preceding the filing of her Petition for Dissolution of Marriage.

4. The parties were duly married to each other on May 30, 1955, and cohabited together as Husband and Wife thereafter.

5. There were three (3) children born of this marriage to-wit: Brooke Mintzer, Glenn Mintzer and Joseph Mintzer.

6. The marriage of the parties is irretrievably broken.

7. The son, Joseph Mintzer, is over the age of eighteen (18) years and is still legally dependent due to his current physical and emotional status.

8. The Husband misrepresented to, and defrauded the Wife out of sums of money properly belonging to the Wife or in which the Wife has a substantial interest, and this Court will provide redress to Wife for Husband's improper conduct.

9. The Husband shall pay to the Wife as and for permanent, periodic alimony the sum of Two Hundred ($200.00) Dollars per week with payments to commence on the first Friday after the execution of this Final Judgment and to continue on the Friday of each and every week thereafter. The obligation shall terminate upon the death or remarriage of the Wife.

10. The Wife is hereby awarded as lump sum alimony the real property located at 21031 N. E. 5th Court, North Miami Beach, Dade County, Florida, known as "North Pointe" and all the personal property and effects therein and this shall include any and all interests the Husband may have in and to said real and personal property. The Husband shall have no interest in the foregoing.

11. The Wife shall keep all of her right, title and interest in and to the Corporation known as Romar-Mini Spa, Inc., a Florida corporation d/b/a Jacquie's Place. Husband shall have no interest therein.

12. (a) The Husband shall maintain adequate medical and hospital

4

insurance coverage for the benefit of the Wife. Said coverage shall be comparable to the medical and hospital insurance coverage that the Husband has been maintaining on behalf of the Wife prior to and during these proceedings.

(b) Each year the Husband shall provide the Wife with proof of said insurance coverage with said proof to commence within twenty (20) days from the date of the entry of this Final Judgment and to continue every year thereafter with the proof being provided on the anniversary date of this Final Judgment.

13. (a) The Husband shall maintain in force and effect a life insurance policy on his life in the sum of Twenty Five Thousand ($25,000.00) Dollars naming Joseph Mintzer as the sole, irrevocable beneficiary thereof. The Husband shall keep the policy in full force and effect, pay all dues, premiums and assessments promptly when due. The Husband shall not borrow against, pledge or otherwise encumber or surrender said policy so as to reduce its value.

(b) The Husband shall give the Wife proof that said insurance is in force and effect and this shall be furnished to the Wife on a yearly basis commencing within twenty (20) days from the entry of this Final Judgment and to continue every year thereafter with the proof being provided on the anniversary date of this Final Judgment. This obligation shall terminate upon the Court's determination that Joseph Mintzer is no longer dependent.

14. The Husband shall be financially responsible for sixty percent (60%) of the payment of fees to the Association for the Advancement of the Mentally Handicapped to keep Joseph Mintzer enrolled therein, should the same be necessary or advisable in future years. The current fee for same is Four Thousand Five Hundred ($4,500.00) Dollars per year and the Husband shall reimburse the Wife for any past or future advancements of monies attributable to him within ninety (90) days from the entry of this Final Judgment or within ninety (90) days after a future payment is made.

15. (a) The Husband shall at all times maintain adequate medical and hospital insurance coverage for the benefit of Joseph Mintzer so long as he is deemed dependent. Said coverage shall be comparable to the medical and hospital insurance coverage that the Husband has been maintaining on behalf of Joseph Mintzer prior to and during these proceedings.

(b) Each and every year the Husband shall provide the Wife with proof of said insurance coverage with the first such proof to commence within twenty (20) days from the date of the entry of this Final

5

Judgment and every year thereafter on the anniversary date of this Final Judgment.

16. The Husband shall retain all of his right, title and interest in and to his jewelry. Wife shall have no interest therein.

17. The Wife shall retain all of her right, title and interest in and to her jewelry. Husband shall have no interest therein.

18. The Husband's trophies shall be distributed to the Husband as an equitable distribution of the property of the parties.

19. The Toyota automobile which is currently in the Husband's possession, and titled jointly, shall be distributed to the Husband as an equitable distribution of the property of the parties.

20. Any and all claims of every kind by the Husband against the Wife, including but not limited to lump sum alimony, rehabilitative alimony, periodic alimony, constructive trusts and/or resulting trusts, and/or claims for special equity are hereby denied in all respects except as otherwise provided herein.

21. Due to the confidential relationship between the relevant parties, due to the consideration or lack thereof relative to the purchase of the real property listed below, due to the legal and beneficial interest ownership of the parties involved, and for the purposes of making equitable restitution and avoiding unjust enrichment, all right, title and interest in and to the real property described below belongs (except as hereinafter awarded) solely to the Husband (Lawrence Mintzer) and the Wife (Margo Mintzer), as a result of that property being the subject of a resulting and/or constructive trust. Said property is legally described as follows:

Unit Number 302, in Building Number 15, of LIME BAY CONDO-MINIUM 8, according to the Declaration of Condominium thereof, as recorded in Official Records Book 5830, at Page 73, of the Public Records of Broward County, Florida. As provided by chapter 63 - 35 Laws of Florida, the Condominium Act as Amended, said description in this conveyance, include all appurtenances to the Apartment above described, including the undivided shares in the common elements appurtenant thereto. The street address is known as 9401 Lime Bay Boulevard, Unit #302, Tamarac, Broward County, Florida.

22. Any and all interest and claims by Issac Mintzer and/or Florence Mintzer for any ownership or equitable lien or for any improvements, or otherwise in said real property known as 9401 Lime Bay Boulevard, Unit #302, Tamarac, Broward County, Florida, are hereby denied in all respects.

6

23. The Wife is entitled to and is hereby awarded as lump sum alimony the real property located at 9401 Lime Bay Boulevard, Unit #302, Tamarac, Broward County, Florida. (As a result of declaring a resulting and/or constructive trust in the name of the Husband and Wife, this provision will award to the Wife the Husband's one-half (½) interest in said real property thereby making the Wife the sole owner of said real property.)

24. The Wife shall take title to the aforesaid real property at 9401 Lime Bay Boulevard, Unit #302, Tamarac, Broward County, Florida, subject to the following terms and conditions:

A. Issac Mintzer and Florence Mintzer or survivor, shall have a life tenancy therein so long as they continue to reside thereon on a permanent continuing basis.

B. Issac Mintzer and Florence Mintzer or survivor, shall not pay rent to the Wife for so long as they exercise said life tenancy and continue to reside on the property on a permanent continuing basis.

C. Issac Mintzer and Florence Mintzer or survivor, shall be financially responsible for and shall continue to make each current mortgage payment(s) for the mortgage encumbering said property, those mortgage payments being the one and the same that they have been paying to Coral Gables Federal Savings & Loan Association. They are further required to pay any and all other expenses relative to said property including but not limited to all real estate taxes, all personal property taxes, maintaining the property in a good state of repair and condition, pay any and all assessments and bills associated therewith, keep the property properly insured, with the Wife (or any future owner) as co-insured/loss payee, with said insurance being in a reasonable amount for property damage and liability purposes, and to do any and all other actions that are necessary to secure and keep the property current and safe.

D. Issac Mintzer and Florence Mintzer shall have the first right of refusal to purchase said real property should the Wife decide to sell the said real property.

E. The Wife shall have the right to refinance said real property up to eighty (80%) percent of the fair market value of same and Issac Mintzer and Florence Mintzer shall be responsible as hereinabove for payment of said mortgage payments so long as the monthly payments of principal, interest, taxes and insurance do not exceed those in effect at the time of any refinancing.

F. All of these provisions apply only to Issac Mintzer and Florence

Mintzer or survivor, personally, and may not be assigned in any manner whatsoever.

G. All of these provisions shall apply to the Wife as sole owner of said real property and any and all future owners of said real property.

25. If a deficiency assessment is made in conjunction with any tax returns jointly filed by the parties, the Husband shall notify the Wife at once in writing (with a copy of the assessment) and Husband shall pay the amount finally ascertained to be due, with any interest and penalties, and any expenses, including attorney's fees, occasioned by the deficiency. The Husband, in all respects, shall indemnify and hold harmless the Wife against, and hold her harmless from, any deficiency assessment or tax lien arising out of any joint tax returns previously or hereafter filed by the parties as well as any related damages and expenses whatsoever.

26. The Husband shall pay the Wife's reasonable attorney's fees and costs in this cause, with the amount thereof to be determined upon notice and hearing, with this Court specifically reserving jurisdiction for this purpose.

27. Except as to dissolution, the Court shall retain jurisdiction to enter such other and further orders and awards as it deems fit and proper herein.

DONE AND ORDERED in Chambers at Miami, Dade County, Florida, this 29th day of January, 1987.